NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CITY OF GLENDALE, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

VIESTE SPE LLC, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 18-0572
FILED 1-28-2020

Appeal from the Superior Court in Maricopa County
No.  CV2015-005387
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Hagens Berman Sobol Shapiro LLP, Phoenix
By Robert B. Carey, Michella A. Kras, John M. DeStefano
*Co-counsel for Defendants/Appellants/Cross-Appellees*

Hagens Berman Sobol Shapiro LLP, Chicago IL
By Daniel J. Kurowski, *Pro Hac Vice*
*Co-counsel for Defendants/Appellants/Cross-Appellees*

Riley, Williams & Piatt LLC, Indianapolis, IN
By William N. Riley, *Pro Hac Vice*
*Co-counsel for Defendants/Appellants/Cross-Appellees*

Sacks, Ricketts & Case LLP, Phoenix
By Cynthia A. Ricketts, Margaret L. Parker, Nathan J. Kunz
*Counsel for Plaintiff/Appellee/Cross-Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Judge:

**¶1**          Vieste SPE, LLC, Vieste Energy, LLC, Michael Comparato, and Mark Branaman (collectively "Vieste") appeal the superior court's summary judgment ruling in favor of the City of Glendale ("City").[1] Vieste argues the court should have found that the City's lawsuit was barred by res judicata and the court improperly interpreted key provisions of a waste-processing contract.  For the following reasons, we affirm.

## BACKGROUND

**¶2**          In 2010, Vieste and the City began discussing a renewable-energy project that involved the City supplying Municipal Solid Waste ("MSW") to Vieste.  The project was a "waste-energy initiative," where Vieste would construct a facility at the City's landfill to sort MSW into waste and recyclables.  The recyclables that still held value would be sold, and the remaining waste would be processed into energy at the facility.  In May 2012, City staff and representatives from Vieste presented the project to the Glendale City Council.

**¶3**          To execute the project, Vieste needed a power purchase agreement for the energy the facility would produce.  Because obtaining that agreement was taking longer than the parties anticipated, they decided to do the project in two phases.  As Vieste informed the City Council, the

---

[1]     Vieste Energy, LLC, is the parent company of Vieste SPE, LLC. Michael Comparato and Mark Branaman are Vieste executives who the City sued individually.  Though all are listed in the notice of appeal, neither the parent company nor the executives raise any separate challenges to the court's grant of summary judgment.

goal of phasing was "in no way, or shape or form[] [to] bifurcate[] the project in half." Rather, the phases were designed to "accelerate" the project so the parties would not have to wait an "extended period of time" for the power purchase agreement to be finalized.

¶4        Phase 1 contemplated Vieste constructing "a mixed waste materials recovery facility that [would] recover and recycle approximately 50% of solid waste stream currently being landfilled," and Phase 2 would "consist of power generation from remaining waste destined for landfilling and a co-located economic development project." In October 2012, the City Council approved the project, voting to execute (1) a master ground lease with Vieste for property located at the landfill, and (2) the Waste Supply Agreement ("Agreement"), governing the supply of MSW the City would need to deliver throughout the project. Significant to this litigation, the Agreement stated that certain yard waste could be delivered to Vieste only during Phase 2 of the project.

¶5        By spring of 2015, Vieste had finished the facilities necessary for Phase 1 and was close to commencing commercial operations, which meant in part that the waste facilities were "operating and able to receive and sort Recovered Recyclables from the Waste received." However, the parties soon ran into difficulties surrounding the meaning of yard waste, and specifically, what waste was allowed under the Agreement during Phase 1.

¶6        Pursuant to Section 17.4 of the Agreement, the parties proceeded to arbitration. The goal of the arbitration was to answer the following: "Is Yard Waste an Acceptable Waste Type under the Waste Supply Agreement before the date on which the Phase 2 Energy Facilities are commissioned?"[2] In a single-page ruling, the arbitrator determined that

---

[2]        The parties agreed on the scope of the arbitration; however, in a letter written at the request of the arbitrator, the City stated:

> [I]f Vieste's sole question is whether "Yard Waste" is deemed an "Acceptable Waste" in the Specifications contained in Exhibit B to the [Agreement], there is no need to submit this matter to arbitration. An arbitration that limited in scope would be unnecessary, given the definitions of "Municipal Solid Waste," "Yard Waste," and "Unacceptable Waste" in Exhibit B. . . . [T]he City is willing to stipulate that "Yard Waste" is an "Unacceptable Waste."

"Yard Waste" was not an "Acceptable Waste Type" during Phase 1 of the Agreement. In awarding attorneys' fees to Vieste, the arbitrator noted the limited scope of his ruling: "In reality, the dispute before me was more about the scope of the arbitration agreement, rather than the respective merits of the parties' position with respect to which party has the obligation to sort Yard Waste . . . . That dispute was not resolved in the arbitration."

¶7 Shortly after the arbitrator's ruling on the merits, the City filed a complaint in the superior court, seeking relief through a number of declaratory judgments and contract-related claims. After filing its answer, Vieste moved to confirm the arbitration award, which the court granted. In the meantime, Vieste moved for judgment on the pleadings, asserting the arbitration award barred the City's complaint based on the law of the case. The court denied the motion.

¶8 After the parties engaged in significant motion practice and discovery, the City filed a second amended complaint seeking relief against Vieste on 16 counts, including claims for declaratory judgment, breach of contract, and negligent misrepresentation. Vieste filed four counterclaims (tort and contract) based on both the formation and execution of the Agreement. Of these claims, most relevant is Count One of the City's complaint, which sought a declaratory judgment that the City's "Municipal Solid Waste is an 'Acceptable Waste'" under the Agreement.

¶9 Eventually the parties filed cross-motions for summary judgment. Both motions addressed numerous issues related to the parties' dealings, but the most pertinent issue for this appeal is Count One—whether yard waste was acceptable during Phase 1 of the project. The superior court granted the City's motion on Count One, concluding that yard waste typically found in the City's MSW stream could be appropriately delivered to Vieste under the Agreement. The court ruled in favor of the City on most of its other claims, Vieste on some, and neither party on others. After the ruling, the parties stipulated to dismiss without prejudice the remaining few counts that had not been resolved in the ruling. After addressing various other matters over the next year, including damages and attorneys' fees, the court issued its judgment, certified as final under Arizona Rule of Civil Procedure 54(c). The judgment awarded the City, inter alia, $280,000 in damages, $2,863,002 in attorneys' fees, $898,193.20 in nontaxable costs and expenses, and $61,899.68 in taxable costs. Vieste filed a timely notice of appeal, and the City filed a timely "conditional" cross-appeal.

## DISCUSSION

**¶10**   Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We view the facts in the light most favorable to Vieste, against whom summary judgment was granted. *See Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 85 (1995). "Even where the facts are not disputed, . . . summary judgment is improper if the evidence of record does not demonstrate that the movant is entitled to judgment as a matter of law." *City of Tempe v. State*, 237 Ariz. 360, 363, ¶ 8 (App. 2015) (internal quotation marks omitted). We review the superior court's grant of summary judgment de novo. *Id.* We also review de novo the interpretation of a contract. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).

**¶11**   The superior court's ruling hinges on what yard waste means under the Agreement. The parties' dispute over waste implicates several portions of the Agreement. Waste is initially described in the definitions section. Section 1.1.54 states that waste "may include municipal solid waste, garbage, brush, debris, animal carcasses, rubbish, refuse, yard waste, other discarded material, and other forms of waste acceptable to Operator," but this waste must comply with Section 2.4, which further addresses the specifications of waste. Section 2.4.1 requires all waste conform to Exhibit B (discussed below), prohibits the City from pre-processing or sorting the waste before Vieste receives it, and requires the City to use "commercially reasonable efforts" not to alter the types of waste it collects during the term of the Agreement. Section 2.4.2 allows Vieste to reject entire loads that fail to meet the waste specifications.

**¶12**   Most significant to this appeal is the meaning of yard waste under Exhibit B, which sets forth the waste specifications allowed under the Agreement. Exhibit B describes "Acceptable Waste Types" and "Unacceptable Waste." Examples of unacceptable waste include household appliances, electronics, tires, and construction or industrial waste. The Acceptable Waste Types—which included the only reference to *yard waste* in Exhibit B—are described as follows:

> In general "Acceptable Waste" is defined as that waste defined as Municipal Solid Waste ("MSW") by the Arizona Corporation Commission in accordance with the definition of a "Biogas Electricity Generator" as defined in the Arizona

Administrative Code ("A.A.C.") R14-2-1802(A)(1)[3] as of the effective date of the Definitive Agreement and further defined as follows:

1. Municipal Solid Waste

    a. Typical MSW generated from residential households and commercial establishments such as retail stores, restaurants, warehouses and other non-manufacturing facilities. The MSW may include waste from the following solid waste composition categories: paper products, plastics, *organics* (wood, *yard* and food) . . . .

2. Yard Waste

    a. *Yard waste* may include brush, cuttings, trimmings, limbs, logs, leaves and pruning from trees, shrubs and lawns. All yard waste shall be delivered in lengths no larger than five (5) feet and a maximum of 12-inch diameter.

    b. Yard Waste shall only be an Acceptable Waste Type [during Phase 2].

(Emphasis added.)

### A.    Claim Preclusion

**¶13**    As a threshold matter, we address Vieste's argument that the arbitration ruling issued in March 2015 bars all of the City's claims in this lawsuit based on the doctrine of res judicata or claim preclusion. The application of claim preclusion is a question of law we review de novo. *Phx. Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 240 (App. 1997). Claim preclusion means "a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim." *Dressler v. Morrison*, 212 Ariz. 279, 282, ¶ 15 (2006). It requires "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *In re*

---

3    Neither party suggests the definition set forth in A.A.C. R14-2-1802(A)(1) is relevant to our analysis of whether yard waste delivered as part of MSW is an acceptable waste under the Agreement.

*Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69–70, ¶ 14 (2006).

¶14          Vieste argues the arbitration ruling "bars relitigation of any issue relating to the composition of the waste, requiring reversal." The City contends Vieste waived claim preclusion because it was not raised in the superior court. The complaint was filed in April 2015, but Vieste did not raise claim preclusion by motion until February 2017, when it filed its motion for summary judgment after the parties had participated in significant post-arbitration motion practice and discovery.[4] Even then, Vieste made only a cursory argument for claim preclusion:

> While the City ignores the plain language of Exhibit B excluding yard waste, *res judicata* bars the City from relitigating this issue. The arbitrator found that yard waste was not "Acceptable Waste," and the Court entered judgment accordingly. That judgment is binding on this Court. *In re Levine*, 174 Ariz. 146, 166, 847 P.2d 1093, 1113 (1993).

(Citation omitted.) The City responded to this argument in an equally brief manner in its response to Vieste's motion. At oral argument on the motion, Vieste made no mention of claim preclusion. It is therefore understandable that the superior court did not address whether the City's second amended complaint is barred by claim preclusion. Thus, we could justify applying waiver in this instance. *See, e.g., Englert v. Carondelet Health Network*, 199 Ariz. 21, 26-27, ¶ 13 (App.2000) (noting that appellate courts generally do not consider issues raised for the first time on appeal). However, in an abundance of caution and in the exercise of our discretion, we decline to do so.

¶15          It is uncontested that the same parties were involved in the arbitration and this civil suit. Additionally, because our statutes give arbitration rulings the force of any other judgment or decree, the arbitration ruling made here is a  final decision on the merits. A.R.S. § 12-1514; *see* Restatement (Second) of Judgments ("Restatement") § 84 cmt. b (1982) ("Assuming that the arbitration procedure has the elements of validity and

---

4          In each of its answers to the City's complaints, Vieste alleged that the City's claims were "barred, in whole or in part, by principles of res judicata." But Vieste cites no authority suggesting that merely alleging an affirmative defense is sufficient to preserve it for appeal.

has become final, it should be accorded claim preclusive effect . . . ."); *see also Levine*, 174 Ariz. at 166 (concluding an arbitration ruling that had been confirmed by the superior court and affirmed by the court of appeals carried preclusive effect).

¶16 To determine if the arbitration decision has a preclusive effect, we look to whether there is an identity of claims between the arbitration ruling and the claims here, which in this case hinges on the arbitration ruling and the related circumstances. The arbitration was limited to a single issue—whether "Yard Waste" was an "Acceptable Waste Type during Phase 1 Count One of the City's second amended complaint sought a declaratory judgment that "The City's Municipal Solid Waste is an 'Acceptable Waste.'"

¶17 The issue presented in the arbitration was therefore based on Exhibit B, subsection 2(b) of the Agreement, which, as discussed above, outlines "Acceptable Waste Types." The arbitrator ruled: "Yard Waste is not an Acceptable Waste Type under the Waste Supply Agreement before the date on which the Phase 2 Energy Facilities are commissioned." The ruling contained no additional details or reasoning. The arbitrator viewed the question and ruling as narrow, stating: "Nothing herein shall constitute a resolution of any other issue raised by the parties under [the dispute resolution section] of the Agreement or be construed to otherwise limit the rights of any party 'to seek any remedy available to such party in law or equity . . . pursuant to . . . the Agreement.'"

¶18 The superior court also determined the arbitration ruling was narrow. In denying Vieste's motion for judgment on the pleadings based on the arbitration ruling, the court stated: "Defendants insist that [the arbitrator's] ruling created certain 'corollaries' that dictate a ruling in their favor. Defendants significantly overstate the scope of [the] ruling, however. He merely found that Yard Waste would be considered an Unacceptable Waste Type during Phase 1."

¶19 Further, in granting summary judgment to the City on the issue of whether yard waste included in the MSW is acceptable waste, the court stated: "[The arbitrator] did not rule on whether the Yard Waste referred to in Exhibit B included both bulk yard waste and yard waste contained in the MSW." Despite these explanations, Vieste argues the arbitration ruling bars relitigation of any issue related to the composition of waste. We disagree.

¶20        Vieste has failed to show an identity of claims between the arbitration and this lawsuit. *See* Restatement § 84 cmt. d ("A preliminary question in giving res judicata effect to an arbitration award is whether the claim or issue was within the scope of the reference to arbitration. In form this question may be put as one . . . *concerning the identity or scope of the claim or issue resolved in arbitration*." (emphasis added)). The arbitration ruling addressed a relatively simple, standalone issue—whether yard waste under Exhibit B subsection 2 was an unacceptable waste. The ruling was presumably based on the plain language of that portion of the Agreement; the arbitrator did not interpret what the term "yard waste" meant, nor did he address or interpret the difference between "yard waste" in subsection 2 and the "organics (wood, yard and food)" in subsection 1. Indeed, the issue of yard organics and the typical MSW composition was not addressed in the arbitration ruling. The second amended complaint seeking a declaratory judgment on Count One and the superior court's grant of summary judgment on this count do not address, or conflict with, the specific "yard waste" issue of the arbitration ruling. Accordingly, claim preclusion does not bar the City's claim against Vieste.

### B.        Meaning of Yard Waste

¶21        The hallmark of contract interpretation is to effectuate the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). In doing so, we begin with "the plain meaning of the words in the context of the contract as a whole." *Grosvenor Holdings*, 222 Ariz. at 593, ¶ 9. If the language is clear, we apply its plain meaning. *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 215 Ariz. 80, 83, ¶ 8 (App. 2007). In construing the contract, we will not interpret one provision of the contract to render another meaningless. *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 478, ¶ 56 (App. 2010). "[I]f reconciliation can be accomplished by any reasonable interpretation," we will interpret the contract accordingly. *Gfeller v. Scottsdale Vista N. Townhomes Ass'n*, 193 Ariz. 52, 54, ¶ 13 (App. 1998). We must interpret the meaning of a contract by interpreting the instrument as a whole. *Tech. Constr., Inc. v. City of Kingman*, 229 Ariz. 564, 568, ¶ 10 (App. 2012). Finally, because specific contract provisions express intent more precisely, we will use specific provisions to qualify the meaning of general provisions. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 291, ¶ 18 (App. 2010).

¶22        To appreciate the context of the Agreement, an understanding of the City's waste collection practices is critical. *See County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 599, ¶ 16 (App. 2010) ("We construe the meaning of a contract provision from the language the parties used and in

view of all circumstances."). The City collects waste from its residents in several ways. Residents and businesses can deposit recyclables into City-provided curbside containers and place trash into other City-provided curbside garbage containers; the waste in these trash containers constitutes MSW. The City collects MSW from the curbside containers once or twice a week for delivery to the City's landfill. Though the City provides guidelines for what may be appropriately placed in each type of container, it regularly receives prohibited materials in both. Materials that do not belong in the MSW (such as tires) are removed when they are dumped at the landfill and then disposed of in an off-site facility.

¶23      Separate from the MSW and recycling programs is the City's monthly bulk trash service, which is based on specific guidelines for collection of "large, bulky items that will not fit into residential garbage containers." Relating to yard waste, tree limbs must be cut into four-foot segments of no more than twelve inches in diameter, and yard clippings (including "grass, leaves, palm tree skins, bark, pine needles") must be placed in plastic bags. Outside the monthly collection, residents and businesses may deliver their trash directly to the landfill during the landfill's operating hours, which the City calls "drop offs." Thus, yard waste can be delivered to the City's landfill through residents putting yard waste in their curbside containers for weekly pickup, through the bulk trash service, and through individual drop offs.

¶24      In attempting to discern the intent of the parties, we first consider whether the waste the City delivered to Vieste complied with the Agreement's plain language. Under Exhibit B, the Agreement fails to distinguish between subsection 1's so-called "yard organics" that are part of the acceptable MSW, and subsection 2's "Yard Waste" that is an unacceptable form of waste. Though Vieste seems to contend that subsection 2's provisions express more specific intent and should control over subsection 1's, we are not persuaded; the subsections are equally specific, and we are required to interpret them in harmony with one another if possible. *See Aztar Corp.*, 223 Ariz. at 478, ¶ 56; *Gfeller*, 193 Ariz. at 54, ¶ 13.

¶25      Vieste argues the superior court erred in determining yard waste in the City's MSW (the "yard organics") was an acceptable waste type and thus wrongfully granted summary judgment on Count One. Vieste contends the yard waste prohibition found in subsection 2(b) of Exhibit B applies to all yard waste collected by the City in any manner. It asserts that "whatever incidental 'yard organics'" are allowed under the Agreement "must be something other than the byproduct of maintaining 'trees, shrubs,

and lawns.'" Vieste does not offer, however, any interpretation as to what would qualify as "yard organics" under the Agreement.

¶26 On its face, Vieste's interpretation would create conflicts amongst various provisions of the Agreement. For example, if we agreed that the yard waste specifications in subsection 2(b) prohibit every kind of yard waste, it would render the "organics (wood, yard and food)" provision meaningless. *See Scholten v. Blackhawk Partners*, 184 Ariz. 326, 329 (App. 1995) ("[A] contract should be construed to give effect to all its provisions and to prevent any of the provisions from being rendered meaningless."). As such, we are unpersuaded by Vieste's interpretation of the Agreement's plain language. We therefore look to whether the extrinsic evidence Vieste offered provides a reasonable interpretation of the Agreement that harmonizes its provisions and reflects the parties' intent.

¶27 Before allowing extrinsic evidence of intent, our analysis requires two steps. We first "consider the allegations made by the proponent of the extrinsic evidence as to the appropriate interpretation of the writing in light of the extrinsic evidence alleged." *Long v. City of Glendale*, 208 Ariz. 319, 328, ¶ 28 (App. 2004); *see Taylor*, 175 Ariz. at 154. Next, we consider the writing and whether it is "reasonably susceptible" to the interpretation proffered by the proponent of extrinsic evidence; if it is, we will admit the evidence. *Long*, 208 Ariz. at 328, ¶ 28; (quoting *Taylor*, 175 Ariz. at 155). However, we need not indulge unreasonable or improbable interpretations unless they are supported by extremely persuasive evidence. *Taylor*, 175 Ariz. at 155 ("[T]he judge need not waste much time if the asserted interpretation is unreasonable or the offered evidence is not persuasive. A proffered interpretation that is highly improbable would necessarily require very convincing evidence.").

¶28 We turn first to the extrinsic evidence Vieste offered in support of its interpretation of the Agreement. The most persuasive is (1) the declaration that in the two-phased approach, Vieste could not process yard waste; (2) evidence of the parties' negotiations leading up to execution of the Agreement; and (3) a chart that noted acceptable waste characterization but did not include yard waste. We are not convinced, however, that these pieces of evidence necessarily support Vieste's interpretation.

¶29 First, the purpose of the two-phased approach had nothing to do with the processing or sorting of waste, but rather, the planned alternative existed because the parties could not secure a buyer for the energy generated by the project. Thus, Phase 1 was focused on recovering

valuable recyclables from the City's MSW, while Phase 2 involved the construction of the waste-to-energy components of the facility. On its face, this does not suggest Vieste would be unable to sort specific kinds of waste during Phase 1.

¶30　　　　Second, as part of the negotiations, Vieste relies on an email from the City's outside counsel to Vieste. Counsel asked for a change in the Agreement, stating that "[t]his language is important to the City, particularly with the removal of yard waste from the stream . . . ." Vieste argues this indicates that MSW delivered to Vieste by the City would not include yard waste. We agree with the superior court that this contention is unpersuasive. Counsel's comment only indicates that he believed yard waste, bulk or otherwise, would be removed from the stream at some point, not that the City agreed to do it. Alternatively, the comment could easily indicate that counsel believed monthly bulk trash would be removed from the stream delivered to Vieste. Additionally, the City had no waste-sorting facility, and even if the City did, under section 2.4.1 of the Agreement, the City was prohibited from pre-sorting waste because it had agreed "not to pre-process or otherwise segregate its stream of Waste in a manner that would materially alter its composition as compared to the general composition of Waste as collected by or delivered to the Landfill." Thus, the City could not modify the makeup of the MSW stream that existed at the time the parties entered the Agreement.

¶31　　　　Third, Vieste relies on an internal email from one of its executives. The email, written several weeks before the Agreement was signed, included a document from the City of Phoenix that evaluated and characterized waste from single-family residences. Vieste stated it relied on the report in developing its own acceptable waste characterization, which was also included in the email. The portion of Phoenix's report Vieste relied on stated that residential waste was composed of 44.9% organic materials, 28.1% of which was leaves, grass, and prunings. The fact that Vieste officials relied on this document plainly shows that they believed the City's waste stream was similar to the Phoenix data. Despite this, on Vieste's own "acceptable waste breakdown" chart, Vieste left the boxes for "Leaves & Grass" and "Prunings" unchecked, indicating they should not be included in Phase 1. Vieste was therefore on notice that at least a quarter of the waste the City delivered to the landfill would be made up of yard-related waste. In context, it is unclear what Vieste's unchecked boxes mean or how the City could have delivered waste completely free of yard-related materials, because the City was prohibited from pre-sorting waste under the Agreement.

¶32        Considering the entire Agreement and the surrounding circumstances, Vieste's extrinsic evidence does not persuade us that the Agreement is reasonably susceptible to Vieste's interpretation.  At most it shows the City was on notice that certain types of yard waste were prohibited in Phase 1.  But in finalizing the Agreement, the parties focused only on yard waste as described in Exhibit B subsection 2(b), rather than changing any mention of yard-related waste within the Agreement or Exhibit B.  Additionally, Vieste's evidence still requires an internally inconsistent interpretation of the Agreement; it is clear there was yard-related waste in the City's MSW prior to execution of the Agreement and that the City was prohibited from altering the waste stream's composition.  It is unclear how the City ever could have fulfilled its end of the Agreement under Vieste's interpretation.

¶33        The City offers a much different interpretation of the Agreement.   To aid its interpretation, the City submitted, inter alia, evidence of its waste-management practices.  *See supra* ¶¶ 22–23.  This evidence, undisputed by Vieste, is critical to properly analyzing the parties' intent.  The City argues the prohibited yard waste in Exhibit B subsection 2(b) referred to the City's monthly bulk trash pickup.  Thus, the City contends that during Phase 1, the Agreement allowed the City to deliver trash from its typical MSW, but not from its bulk trash pickup.  Indeed, the language of describing yard waste in Exhibit B subsection 2 and the City's bulk waste specifications are nearly identical, revealing they were likely contemplated in conjunction with one another.[5]

¶34        Consistent with the superior court's ruling, we are persuaded by this interpretation from the outset because it allows reconciliation of the Agreement's "yard waste" and "yard organics" provisions.  *See Gfeller*, 193 Ariz. at 54, ¶ 13  ("We will, if possible, interpret a contract in such a way as to reconcile and give meaning to all of its terms, if reconciliation can be accomplished by any reasonable interpretation."); *see also Tech. Constr.*, 229 Ariz. at 568, ¶ 10.  Further, this interpretation works in harmony with related provisions of the Agreement and as a whole.  For example, section 2.4.1 prohibits the City from sorting waste before it delivers the waste to Vieste and requires the City to make efforts not to alter the waste supply it receives.  This provision is harmonious with the interpretation that "yard

---

[5]        Subsection 2(a) of Exhibit B provides: "All yard waste shall be delivered in lengths no larger than five (5) feet and a maximum of 12-inch diameter."  The city's bulk-trash specifications provide: "Tree limbs and other objects must be less than twelve (12) inches in diameter" and "[c]ut tree limbs into four (4) foot segments . . . ."

waste" means bulk yard waste, because the City could simply refrain from delivering bulk yard waste loads to Vieste, with no sorting necessary. This interpretation is also in accord with section 2.4.2, which allows Vieste to reject entire loads that do not conform with the Agreement. If the City was precluded from delivering its regularly composed MSW, *supra* ¶ 30, which could contain up to 25% yard-related materials, Vieste would not need to reject any loads—each load would already meet the specifications, rendering section 2.4.2 meaningless.

¶35 We agree with the superior court's conclusion that yard waste included with the City's MSW (not bulk waste) is acceptable waste during the first phase of the Agreement. Accordingly, we affirm the court's grant of summary judgment in favor of the City on Count One.

## C.  Remaining Issues

¶36 Because we affirm the superior court's summary judgment ruling as to Count One, we also affirm the remainder of the court's ruling. Vieste has not developed any meaningful arguments for reversal of the court's ruling related to the rest of the parties' competing claims; therefore, any issues that might have been raised as to those claims are waived. *See* ARCAP 13(a)(7); *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived."). Nor do we address the contingent cross-appeal filed by the City, asserting that expenditure of public funds required to comply with the Agreement as interpreted by Vieste would violate the Gift Clause of the Arizona Constitution. *See* Ariz. Const. art. 9, § 7.

**CONCLUSION**

¶**37** We conclude that (1) the City's second amended complaint was not barred by claim preclusion, and (2) the superior court properly determined the City's MSW, and whatever incidental yard waste might be contained therein when delivered to Vieste, is acceptable under the parties' Agreement. We therefore affirm the superior court's grant of summary judgment. Subject to compliance with ARCAP 21, we grant the City's request for reasonable attorneys' fees and costs pursuant to section 17.5 of the Agreement, which states that the prevailing party in any legal proceeding shall be entitled to recover reasonable attorneys' fees and costs.



AMY M. WOOD • Clerk of the Court
FILED: AA